# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MCMENAMIN, JR., and JESSICA MCMENAMIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARCH INSURANCE COMPANY, and ARCH INSURANCE SOLUTIONS, INC.,<br><br>Defendants. | Case No. \_\_20-1262\_\_ |

## CLASS ACTION COMPLAINT

Plaintiffs, James McMenamin, Jr. and Jessica McMenamin (collectively, "**Plaintiffs**"), bring this Class Action Complaint individually, and on behalf of all others similarly situated, against Defendants, Arch Insurance Company and Arch Insurance Solutions, Inc. (collectively, the "**Insurers**" or "**Defendants**"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of all persons who paid for and/or obtained an "Individual Travel Protection Policy" (the "**Policy**" or "**Policies**") from the Insurers, and who have been denied their claim for travel reimbursements due to Covid-19 related cancellations, delays or interruptions.

2. On or about January 23, 2020, Plaintiffs booked travel from Pittsburgh, Pennsylvania to London, England, for what was ultimately a vacation tour from London to Rome, Italy. Plaintiffs trip was scheduled to depart on June 18, 2020, and to return on June 28, 2020 (the

1

"Trip"). Upon booking their travel, Plaintiffs purchased, paid for, and were issued an Individual Travel Protection Policy from the Insurers, pursuant to which the Insurers agreed to, among other things, reimburse Plaintiffs for unused non-refundable prepaid payments or deposits associated with the cancellation, delay, or interruption of the Trip.

3. Due to the Covid-19 pandemic, and governmental orders issued in connection therewith, Plaintiffs' Trip was cancelled.

4. As a result of that cancellation, Plaintiffs incurred certain costs, including the unused non-refundable prepaid payments or deposits for the Trip, for which they each submitted a claim under the Policy.

5. In defiance of the plain terms and conditions of the Policy, the Insurers have failed and refused to honor their contractual obligations to reimburse Plaintiffs for the unused non-refundable prepaid payments or deposits incurred due to the cancellation of Plaintiffs' Trip.

6. Upon information and belief, the Insurers have – on a uniform basis – failed and refused to reimburse their insureds under the Policies for unused non-refundable prepaid payments or deposits incurred as a result of the cancellation, delay, and/or interruption of trips due to Covid-19 and/or associated governmental orders.

7. The Plaintiffs and members of the Class are entitled to reimbursements as contracted for under the Policies.

**PARTIES**

8. Plaintiffs, James McMenamin, Jr. and Jessica McMenamin, are individuals and citizens of the Commonwealth of Pennsylvania, residing in Butler County, Pennsylvania.

9. Defendant Arch Insurance Company ("Arch Insurance") is a Missouri corporation with its principal place of business at Harborside Three, 210 Hudson Street, Suite 300, Jersey City,

2

New Jersey, 07311. Arch Insurance is an admitted insurer in all fifty states of the United States, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, and Guam.

10. Arch Insurance Solutions, Inc. ("Arch Solutions") is a Delaware corporation with its principal place of business at Executive Plaza IV, 11350 McCormick Road, Suite 102, Hunt Valley, Maryland 21031. Arch Solutions provides third-party administrative services to Arch Insurance, including the handling and disposition of claims submitted under the Policies. On information and belief, Arch Solutions administered, and denied, Plaintiffs' claims.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiffs and at least one member of the Class, as defined below, are citizens of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

12. This Court has personal jurisdiction over Defendants because at all relevant times they have engaged in substantial business activities, including the sale of Policies, in Pennsylvania. Defendants have, at all relevant times, transacted, solicited, and conducted business in Pennsylvania through their employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

13. Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in this District because Plaintiffs' Policies were purchased in this District, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

## FACTUAL BACKGROUND

*The Trip*

14. On or about January 23, 2020, Plaintiffs made travel accommodations with AffordableTours.com ("Affordable Tours"), including the purchase of airline tickets for travel from Pittsburgh, Pennsylvania to London, England, for a touring vacation from London to Rome, Italy, which was scheduled to depart on June 18, 2020, and return on June 28, 2020. The tickets for the Trip were prepaid at a cost of $1,283.42 per person, or $2,566.84 total.

15. In response to safety concerns and governmental orders regarding the Covid-19 pandemic, on or about April 4, 2020, Affordable Tours cancelled Plaintiffs' Trip.

16. On or about May 12, 2020, Plaintiff James McMenamin, Jr. submitted a claim to Defendants to be reimbursed for his Trip, including unused non-refundable prepaid payments or deposits under the Policy. Plaintiff James McMenamin, Jr. was assigned Claim Number TVLC76038620, and Member ID Number TVL2712651220 ("**James' Claim**").

17. On or about May 12, 2020, Plaintiff Jessica McMenamin submitted a claim to Defendants to be reimbursed for her Trip, including unused non-refundable prepaid payments or deposits under the Policy. Plaintiff Jessica McMenamin was assigned Claim Number TVLC77011420, and Member ID Number TVL2712651420 ("**Jessica's Claim"**).

18. On or about June 23, 2020, Defendants denied James' Claim, stating "[w]e have determined that we are unable to approve your claim or to provide any benefits under your claim."

19. On or about June 23, 2020, Defendants denied Jessica's Claim, stating "[w]e have determined that we are unable to approve your claim or to provide any benefits under your claim."

4

*<u>The Travel Insurance Policy</u>*

20. On or about January 23, 2020, Plaintiffs applied for and purchased an "Individual Travel Protection Policy" administered by Arch Insurance Solutions, Inc., and underwritten by Arch Insurance Company, to insure their Trip.

21. Section I, Part A of the Policy sets forth coverage for Trip Cancellation and provides, in relevant part, as follows:

> We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the amount of the unused non-refundable prepaid Payments or Deposits for the Travel Arrangements You purchased for Your Trip, when You cancel Your Trip prior to departure for a covered Unforeseen reason.

22. The Policy provides a list of Unforeseen reasons, one of which is "for Other Covered Events, as defined . . . ."

23. The Policy defines the phrase "Other Covered Events" to include a circumstance where "[the policyholder] or [the policyholder's] Traveling Companion [is] . . . quarantined . . . ." The Policy does not define the term "quarantine."

24. The Policy's definition of the phrase "Other Covered Events" also includes "a cancellation of Your Trip if Your arrival on the Trip is delayed and causes You to lose 50% or more of the scheduled Trip duration due to the reasons covered under the Trip Delay Benefit . . . ."

25. The Policy also contains a Cancellation For Any Reason Benefit that provides coverage for any reason not otherwise covered under the Policy.

26. The Cancellation For Any Reason Benefit in the Policy is described as follows:

> We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for 75% of the unused non-refundable prepaid Payments or Deposits for the Travel Arrangements You purchased for Your Trip, when You cancel Your Trip prior to departure for any reason not otherwise covered by this policy . . . .

5

27. The Policy further contains a Trip Delay Benefit, which is described as follows:

If You are delayed for 6 hours or more while en route to, during or returning from Your Trip due to a covered Travel Hazard, We will reimburse You up to a Maximum Benefit Amount shown in the Schedule of Benefits, for the expenses You incur for additional hotel nights, meals and local transportation while You are delayed.

28. The Policy defines "Travel Hazard" as a "delay caused by or resulting from . . . any delay of Your Common Carrier . . . [or] quarantine . . . ."

29. The Maximum Benefit Amount under the Policy on the Schedule of Benefits is as follows:

### SCHEDULE OF BENEFITS

| Benefits | Maximum Benefit Amount |
| --- | --- |
| **Part A – Travel Arrangement Protection** | |
| Trip Cancellation | 100% of Trip Cost (Maximum $10,000) |
| Cancellation for Any Reason | Up to 75% of Non-Refundable Trip Cost (Maximum $10,000) |
| Trip Interruption | 100% of Trip Cost (Maximum $10,000) |
| Occupancy Upgrade | 100% of Trip Cost (Maximum $10,000) |
| Missed Connection | $500 |
| Trip Delay | $1,000 ($200/day) |

30. Upon information and belief, the Policies issued by Defendants are uniform in their terms and coverage.

31. Members of the Class also purchased Policies from Defendants for the same type of travel insurance coverage as Plaintiffs.

***Covid-19 and Related Governmental Orders***

32. The Covid-19 virus is a highly contagious airborne virus that has rapidly spread and continues to spread across the United States. The virus has been declared a pandemic by the World Health Organization.

33. The Covid-19 pandemic is a public health crisis that has profoundly affected all aspects of society, prompting various federal agencies and governmental authorities to issue orders and guidance designed to slow the pace at which the virus is transmitted.

34. In the midst of the emerging crisis, The Honorable Tom Wolf, Governor of the Commonwealth of Pennsylvania, issued a series of Orders relating to the Covid-19 pandemic.

35. On March 6, 2020, Governor Wolf issued a Proclamation of Disaster Emergency (the "**Proclamation**"), stating that "pursuant to the provisions of Subsection 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7101, et seq., I do hereby proclaim the existence of a disaster emergency throughout the Commonwealth."[1]

36. On March 23, 2020, Governor Wolf issued a Stay at Home Order for citizens of certain counties within the Commonwealth of Pennsylvania ("**March 23 Order**"). The March 23 Order mandated that all residents of the counties named therein must remain at home "except as needed to access, support, or provide life-sustaining business, emergency, or government services."[2]

37. On March 27, 2020, Governor Wolf extended the March 23 Order to include several other counties, including Butler County, Pennsylvania ("**March 27 Order**").[3]

38. On April 1, 2020, Governor Wolf extended the March 23 Order to include all counties within the Commonwealth of Pennsylvania ("**April 1 Order**", or, collectively with the March 23 Order and March 27 Order, the "**Orders**").[4]

---

[1] Governor Wolf, "Proclamation of Disaster Emergency," (Mar. 6, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

[2] Governor Wolf, "Order of the Governor of the Commonwealth of Pennsylvania For Individuals to Stay Home," (Mar. 23, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-TWW-COVID-19-Stay-at-Home-Order.pdf.

[3] Governor Wolf, "Amendment to the Order of the Governor of the Commonwealth of Pennsylvania For Individuals to Stay Home," (Mar. 27, 2020), https://www.governor.pa.gov/newsroom/governor-wolf-and-health-secretary-expand-stay-at-home-order-to-nine-more-counties-to-mitigate-spread-of-covid-19-counties-now-total-19/.

[4] Governor Wolf, "Order of the Governor of the Commonwealth of Pennsylvania For Individuals to Stay Home," (April 1, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf.

39. Following issuance of the April 1 Order, the Governor issued "Stay At Home Order Guidance," which provides, in pertinent part:

**Individuals may leave their residence ONLY to perform any of the following allowable individual activities and allowable essential travel:**

**ALLOWABLE INDIVIDUAL ACTIVITIES**

- Tasks essential to maintain health and safety, or the health and safety of their family or household members (including, but not limited to, pets), such as obtaining medicine or medical supplies, visiting a health care professional, or obtaining supplies they need to work from home.

- Getting necessary services or supplies for themselves or their family or household members, or to deliver those services or supplies to others, such as getting food and household consumer products, pet food, and supplies necessary to maintain the safety, sanitation, and essential operation of residences. This includes volunteer efforts to distribute meals and other life-sustaining services to those in need.

- Engaging in outdoor activity, such as walking, hiking or running if they maintain social distancing.

- To perform work providing essential products and services at a life-sustaining business (see below for details about life-sustaining business activities).

- To care for a family member or pet in another household.

**ALLOWABLE ESSENTIAL TRAVEL**

- Any travel related to the provision of or access to the above-mentioned individual activities or life-sustaining business activities (see below for details about life-sustaining business activities).

- Travel to care for elderly, minors, dependents, persons with disabilities, or other vulnerable persons.

- Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

- Travel to return to a place of residence from an outside jurisdiction.

- Travel required by law enforcement or court order.

- Travel required for non-residents to return to their place of residence outside the commonwealth.

***

(the "**Guidance**").[5]

40. The Proclamation, Orders, and Guidance subject Pennsylvania citizens to a "quarantine" within the meaning of the Policy and of the everyday use of the word.

41. Other states have issued similar restrictive orders related to the Covid-19 pandemic.

*Plaintiffs' Claims for Benefits Under the Policy Were Denied*

42. Plaintiffs' planned for and paid for their Trip and Policy prior to the aforementioned Proclamation, Orders, and Guidance being issued.

43. Plaintiffs' Trip was cancelled while the aforementioned Proclamation, Orders, and Guidance were in effect, as a direct result of the Covid-19 pandemic.

44. As a result of such cancellation, Plaintiffs incurred losses in the form of unused non-refundable prepaid payments or deposits.

45. In accordance with the terms and conditions of the Policy, Plaintiffs each submitted a claim to Insurers seeking reimbursement for unused non-refundable prepaid payments or deposits.

46. The Insurers denied Plaintiffs' claims, in breach of the Policy.

## CLASS ALLEGATIONS

47. Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid for and/or obtained an Individual Travel Protection Policy from the Insurers, and whose claims for reimbursement were denied by or on behalf of Insurers after their trips were cancelled due to the Covid-19 pandemic, or Covid-

---

[5] https://www.scribd.com/document/452929448/04-04-20-Stay-at-Home-Order-Guidance.

9

19-related government stay at home orders, proclamations, and/or guidance (the "Class").

48. Excluded from the Class are Defendants, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendants have a controlling interest, the legal representative, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

49. Plaintiffs reserve the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

50. The requirements of Rule 23(a)(1) have been met. The Class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Insurers' records, including but not limited to, the sales and transaction records that Insurers have access to and/or own.

51. The requirements of Rule 23(a)(2) have been met. There is a well-defined community of interest and there are common questions of fact and law affecting members of the Class. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

    a. Whether such governmental orders, proclamations, and guidance constitute – either individually or collectively – a "quarantine" within the meaning of Insurers' policies;

    b. Whether Insurers' denials of the claims submitted by Plaintiffs and the members of the Class were premeditated and the product of a coordinated effort to (i)

10

dissuade Plaintiffs and the other members of the Class from submitting and/or pursuing claims under their Policies and/or (ii) to limit the Insurers' losses arising from such claims; and

    c.    Whether Plaintiffs and members of the Class are entitled to damages, punitive damages, costs and/or attorneys' fees for Insurers' acts and conduct.

52.    The requirements of Rule 23(a)(3) have been met. Plaintiffs' claims are typical of the claims of the members of the Class. The claims of the Plaintiffs and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct.

53.    Plaintiffs and members of the Class were each customers of Insurers, each having applied for and purchased a travel insurance policy that is substantially identical in all material respects from the Insurers. Each likewise submitted a claim under their Policies, and each such claim was denied on the basis that the claims were not covered under the Policies.

54.    The requirements of Rule 23(a)(4) have been met. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the Class. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and have no interests antagonistic to the members of the Class. In addition, Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiffs and the Class members are substantially identical as explained above. While the aggregate damages that may be awarded to the members of the Class are likely to be substantial, the damages suffered by the individual members of the Class are relatively small. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Certifying the case as a class action will centralize these substantially

identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiffs and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Insurers' uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

## FIRST CLAIM FOR RELIEF

### DECLARATORY RELIEF
### (On Behalf of Plaintiffs and Members of the Class)

55. Plaintiffs incorporate by reference all preceding paragraphs, as though the same were set forth in their entirety.

56. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, in which Plaintiffs and members of the Class seek a judicial determination of an actual controversy regarding coverage for their unused non-refundable prepaid payments or deposits caused by a cancellation, delay, or interruption of their trips due to Covid-19.

57. The term "quarantine" is used throughout the Policy, but it is not defined therein. As such, the term "quarantine" must be given its ordinary and plain meaning as informed by, *inter alia*, its dictionary definition and the intent of the parties, as well as the custom in the industry or usage in the trade.

58. Based on the relevant Policy language and the facts, Plaintiffs' and Class members' losses of unused non-refundable prepaid payments or deposits arise from a "quarantine" within the meaning of the Policies, and – as such – triggers the Trip Delay benefits and Trip Cancellation benefits under the Policies.

59. Declaratory relief from this Court will resolve the aforementioned controversy and dispute.

12

## SECOND CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (On Behalf of Plaintiffs and Members of the Class)

60. Plaintiffs incorporate by reference Paragraphs 1 through 54 above as though the same were set forth here in their entirety.

61. The Policies are a valid and binding contract, for which Plaintiffs and members of the Class paid material consideration in the form of a premium.

62. Pursuant to the terms and conditions of the Policies, the non-refundable prepaid payments or deposits are specifically covered thereunder.

63. The Insurers have materially breached the Policies by failing and refusing to reimburse Plaintiffs and members of the Class for any of their non-refundable prepaid payments or deposits. The aforementioned material breaches have damaged, and will continue to damage, Plaintiffs and members of the Class.

64. Plaintiffs and members of the Class have performed all of their obligations under the Policies, and any and all conditions precedent to coverage under the Policies for the non-refundable prepaid payments or deposits have been satisfied, waived, or revoked, and/or the Insurers are estopped from enforcing them at this time.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in favor of Plaintiffs and the Class against Defendants as follows:

    a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

Case 2:20-cv-02625-RE Document 21 Filed 08/26/20 Page 13 of 14

b. For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

c. For damages in an amount to be determined by the trier of fact;

d. For an order of restitution and all other forms of equitable monetary relief;

e. Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

f. Awarding pre- and post-judgment interest on any amounts awarded; and

g. Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

A jury trial is demanded on all claims so triable.

Dated: August 26, 2020

    Respectfully submitted,

    */s/ Gary F. Lynch*
    Gary F. Lynch (PA ID 56887)
    Kelly K. Iverson (PA ID 307175)
    Jamisen A. Etzel (PA ID 311554)
    Nicholas A. Colella*
    **CARLSON LYNCH, LLP**
    1133 Penn Avenue, 5th Floor
    Pittsburgh, PA 15222
    T: (412) 322-9243
    F: (412) 231-0246
    glynch@carlsonlynch.com
    kiverson@carlsonlynch.com
    jetzel@carlsonlynch.com
    ncolella@carlsonlynch.com

    *Counsel for Plaintiffs*

    *Pro hac vice* application forthcoming